UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAVID KENNEDY, *on behalf of himself
and similarly situated individuals*,

                              Plaintiff,                **REPORT & RECOMMENDATION**
                                                                              23 CV 2790 (DLI)(LB)

    -against-

IMPERIAL SECURITY AND CONSULTANTS LLC,
and JOHN MYRTLE,

                              Defendants.
-----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff David Kennedy brings this action against defendants Imperial Security and Consultants LLC and John Myrtle. Plaintiff alleges that defendants violated his rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et. seq. ("FLSA") and the New York Labor Law, Art. 6, §§ 190-99, and Art. 19, §§ 650-65 (collectively "NYLL"). Despite proper service of the summons and complaint, defendants failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment against defendants pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Dora L. Irizarry referred plaintiff's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion should be denied without prejudice, and plaintiff should be given 30 days leave to file an amended complaint.

## BACKGROUND[1]

      Defendant Imperial Security and Consultants LLC ("Imperial Security") is a New York domestic limited liability company with a principal place of business at 1159 East 37th Street,

---

[1] The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

Brooklyn, New York. Complaint, ECF No. 1 ¶¶ 10, 11. Defendant John Myrtle is Imperial Security's "owner, officer, and/or agent." Id. ¶ 17.

Plaintiff was employed as a security guard at defendants' security company from approximately May 2021 through March 2022. Id. ¶ 6. Plaintiff was stationed at The Alligator Lounge, a bar in Brooklyn. Id. ¶ 34. Throughout his employment by defendants, plaintiff worked 10-hour shifts, from approximately 7:00 p.m. to 5:00 a.m. Id. ¶¶ 35, 36. Also throughout his employment, plaintiff was paid $20.00 per hour for all hours worked. Id. ¶¶ 37, 38. For the first two months of plaintiff's employment, he worked three shifts per week, for a total of 30 hours per week. Id. ¶ 35. However, from July 2021 through March 2022, plaintiff worked five or six days per week, for a total of 50 or 60 hours per week. Id. ¶ 36. Plaintiff alleges that defendants failed to pay him overtime compensation for this period. Id. ¶¶ 50-61. In addition, plaintiff alleges that defendants failed to provide him with proper wage statements and notices, id. ¶¶ 62-68, and failed to timely pay wages. Id. ¶¶ 69-72.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 14, 2023. ECF No. 1. Although plaintiff was required to serve defendants with the summons and complaint by July 13, 2023, Fed. R. Civ. P. 4(m), he did not do so. On July 20, 2023, the Court ordered plaintiff to file proof that defendants were timely served, or to show good cause why timely service was not made. See ECF Order dated July 20, 2023. In response, plaintiff served defendants with the summons and complaint on July 24 and 25 and filed proof of service on July 27, 2023.[2] ECF Nos. 8, 9. Plaintiff did not request a *nunc pro tunc* extension of the Rule 4(m) deadline or demonstrate good cause why timely service

---

[2] Plaintiff served Imperial Security and Consultants LLC with process by delivering copies of the summons and complaint to an authorized representative of the New York Secretary of State, in accordance with Section 303 of New York Limited Liability Law. ECF No. 8. Plaintiff personally served defendant Myrtle. ECF No. 9.

was not made. The Court ordered plaintiff to show good cause for his failure to comply with the Rule 4(m) deadline. See Order to Show Cause dated August 30, 2023. In response, plaintiff's counsel stated that service was not timely made due to an "administrative oversight." ECF No. 11. The Court charitably found good cause, granted plaintiff a *nunc pro tunc* extension of the Rule 4(m) deadline, and ordered defendants to respond to the complaint by October 10, 2023. See ECF Order dated September 20, 2024.

Defendants did not respond to the complaint. On November 21, 2023, the Court issued a notice of impending dismissal for failure to prosecute, as plaintiff had not "taken any meaningful action in this case other than serving the summons and complaint on defendants and doing it beyond the requisite deadline." See ECF Order dated November 21, 2023. The Court ordered plaintiff to take appropriate action by December 4, 2023. Id. Plaintiff then made two requests for entry of default against defendants. ECF Nos. 13, 15. Plaintiff's first request contained the wrong defendant's name in counsel's affirmation in support of the request. ECF No. 13-1 ¶ 2. On December 4, 2023, plaintiff filed an amended request with the correct defendants' names. ECF No. 15-1, n. 1. The Clerk of Court noted defendants' default pursuant to Federal Rule of Civil Procedure 55(a) on December 5, 2023. ECF No. 17.

Plaintiff again took no action in this case for over two months. On February 14, 2024, the Court issued a second notice of impending dismissal for failure to prosecute. See ECF Order dated February 14, 2024. The Court ordered plaintiff to move for a default judgment against defendants by February 28, 2024. Id. Plaintiff filed the instant motion on that date.[3] ECF No. 19. Plaintiff's

---

[3] Pursuant to Local Rule 55.3(c), plaintiff filed an affirmation of service stating that the motion and supporting papers were mailed to defendants at 1159 East 37th Street, Brooklyn, New York, 11210, which plaintiff's counsel avers is both the last known business address of the corporate defendant and the last known residential address of the individual defendant. ECF Nos. 21-7, 23.

motion includes plaintiff's counsel's declaration, ECF No. 21, plaintiff's declaration,[4] ECF No. 22; and plaintiff's memorandum of law, ECF No. 20. The motion was referred to me.

## DISCUSSION

### I. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In making this determination, "the court is limited to the non-conclusory, factual allegations in the complaint." Antoine v. Brooklyn Maids 26, Inc., 489 F. Supp. 3d 68, 78 (E.D.N.Y. 2020)

---

[4] The declaration contains another individual's name on the first line. ECF No. 22 at 1 ("I, Alfredo Andrade Solis, declare …"). As the caption and signature page both contain plaintiff's name, the Court presumes that the reference to Mr. Andrade is an error.

4

(quotation and citation omitted). The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## II. Liability

Plaintiff's motion for a default judgment should be denied because plaintiff has not established that defendants are subject to the FLSA. The FLSA applies only to employees "(1) who are personally engaged in interstate commerce or in the production of goods for interstate commerce or (2) who are employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." Newman v. W. Bar & Lounge, Inc., No. 20-CV-1141, 2021 WL 2401176, at *3 (E.D.N.Y. June 11, 2021) (citing 29 U.S.C. § 206(a), (b)). "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively." Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009).

Plaintiff invokes FLSA's enterprise coverage provision.[5] ECF No. 1 ¶ 12. A business is an enterprise engaged in commerce or in the production of goods for commerce when it (1) has

---

[5] Plaintiff does not allege individual coverage. Nonetheless, the Court notes that based on the allegations in the complaint, individual coverage does not apply. "The FLSA's individual coverage provision provides that any individual employee 'engaged in commerce or in the production of goods for commerce' is covered by the Act." Jacobs v. New York Foundling Hosp., 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), aff'd, 577 F.3d 93 (2d Cir. 2009). Plaintiff does not allege that he was involved in the production of goods for interstate commerce. See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (noting that security guard plaintiff "cannot claim to have been involved in the production of goods for commerce"). Thus, to be individually covered by the FLSA, plaintiff must allege he was engaged in commerce while employed by defendants. "Employees are 'engaged in commerce' within the meaning of the [FLSA] when they are performing work involving or related to the movement of persons or things . . . among several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. To be engaged in commerce, plaintiff must "work 'in the channels' of 'interstate or foreign commerce,' or 'in activities so closely related to this commerce, as to be considered a part of it,' e.g., 'regular[ ] use [of] the mails, telephone or telegraph for *interstate* communication'; 'regular[ ] travel *across State lines* while working.'" Jian Long Li v. Li Qin Zhao, 35 F. Supp. 3d 300, 308 (E.D.N.Y. 2014) (quoting 29 C.F.R. § 779.103). "Activities that 'simply affect or indirectly relate to interstate commerce' are insufficient to plead individual coverage." Jones v. SCO Fam. of Servs., 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016). "As a basic rule, 'if [the plaintiff] did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA.'" Santacruz v. Blok Chocolatier LLC, No. 19-CV-544, 2021 WL 4341103, at *4 (E.D.N.Y. June 23, 2021) (quoting Yang Li v. Ya Yi Cheng, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012)). Here, plaintiff does not allege that he was personally engaged in interstate commerce; that he was involved with the movement of materials between states;

5

employees engaged in commerce or who produce, handle, sell, or otherwise work on goods that have moved in interstate commerce, and (2) has gross annual sales of $500,000 or more. 29 U.S.C. § 203(s)(1).

Plaintiff merely repeats this statutory language. See ECF No. 1 ¶ 12 (alleging that defendant Imperial Security has "employees engaged in commerce or in the production of goods and services for commerce and handling selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an annual gross sales volume of more than $500,000.00). In other employment contexts, courts in this District have accepted such "conclusory allegations of enterprise coverage" on a motion for default judgment "where it may be inferred from the type of business enterprise that it was engaged in interstate commerce." Cabrera v. Canela, 412 F. Supp. 3d 167, 179 (E.D.N.Y. 2019) (inferring enterprise coverage for plaintiff employed at restaurant and collecting cases); see also Oyenuga v. Presidential Sec. Servs. LLC, No. 22-CV-4972, 2023 WL 7687237, at *5 (E.D.N.Y. Sept. 25, 2023) (collecting cases in which courts inferred enterprise coverage for cleaning company, grocery store, and restaurant).

However, courts have declined to infer enterprise coverage "based solely on the job description of 'security personnel.'" Oyenuga, 2023 WL 7687237 at *5. "Unlike a grocery store or a restaurant, security services and a security person do not necessarily have the requisite ties to interstate commerce." Id. Instead, a security guard plaintiff must allege facts linking a security company defendant to interstate commerce. See id. at *5; Sarr v. VEP Associates LLC., No. 22-CV-4386, 2024 WL 1251600, at *4 (E.D.N.Y. Mar. 25, 2024) (declining to infer enterprise

---

that he regularly travelled across state lines for work; or that he had any contact with out-of-state customers or businesses.

6

coverage for security guard where plaintiff provided a "rote recitation of the statutory language" with "no additional factual information regarding the nature of the security services provided, any tools or implements used to perform those services, or how the services connect to interstate commerce"); Talmaci v. VEP Assocs. LLC, No. 22-CV-5309, 2024 WL 1124834, at *4–5 (E.D.N.Y. Mar. 14, 2024) (same). A plaintiff can demonstrate such ties by alleging that defendant's employes wear uniforms or handle goods that originated out-of-state.[6] See Perry v. High Level Dev. Contracting & Sec. LLC, No. 20-CV-2180, 2022 WL 1018791, at *6 (E.D.N.Y. Mar. 16, 2022), report and recommendation adopted, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022) ("Because Plaintiff alleges that she and other employees used uniforms and radios provided by Defendants as part of their employment, and those materials undoubtedly moved in interstate commerce, Plaintiff has shown that Defendants meet the enterprise coverage test."); Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015) (denying summary judgment on issue of enterprise coverage where parties disputed the out-of-state provenance of security guard's uniform); Chime v. Peak Sec. Plus, Inc., 137 F. Supp. 3d 183, 190 (E.D.N.Y. 2015) ("[Plaintiff] plainly alleges that Peak Security is an enterprise engaged in commerce or in the production of goods for same, in that, *inter alia,* its employees handle goods and materials [*e.g.* log books, uniforms, and walkie-talkies] that have been produced for and moved in commerce."); Jones v. E.

---

[6] Some courts have also suggested that enterprise coverage may be inferred where a security guard protects a business that is engaged in interstate commerce. See, e.g., Blue v. Finest Guard Servs., Inc., No. 09-CV-133, 2010 WL 2927398, at *5 (E.D.N.Y. June 24, 2010), report and recommendation adopted, 2010 WL 2927403 (E.D.N.Y. July 19, 2010) (declining to infer enterprise coverage where security guard plaintiffs did not allege, *inter alia*, that the locations they protected were engaged in commerce); Oyenuga, 2023 WL 7687237 at *4 (declining to infer enterprise coverage where plaintiff did not allege, *inter alia*, "the location(s) where his security services were retained"). However, these cases identify a pleading deficiency; they do not hold that a security company is subject to the FLSA based on where it stations its employees. Other courts have declined to infer enterprise coverage where plaintiff alleged that he was stationed as a security guard at a business engaged in interstate commerce. See Talmaci, 2024 WL 1124834 at *4–5 (declining to infer enterprise coverage where plaintiff was stationed as a security guard at supermarkets but did not allege he was "involved with the movement of materials among or between states or that he had any contact with any out-of-state customers or businesses"). As such, plaintiff's allegation that Imperial Security stationed him at a bar, without more, is insufficient to establish enterprise coverage.

Brooklyn Sec. Servs. Corp., No. 11-CV-1021, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012) ("[Plaintiff] alleged that EB Security had employees who handled materials that had moved in interstate commerce, such as uniforms, walkie-talkies, and flashlights.").

It is not difficult to plausibly allege that a defendant is an enterprise engaged in commerce and therefore covered by the FLSA, yet plaintiff fails to do so. "Enterprise coverage has been interpreted broadly by the courts," Boekemeier v. Fourth Universalist Soc. in City of New York, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000), and "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." Nichols v. Mahoney, 608 F. Supp. 2d 526, 548 (S.D.N.Y. 2009) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F.Supp. 504, 530 (S.D.N.Y. 1998)). If plaintiff had asserted that Imperial Security "purchased or handled out-of-state supplies, then the pleading requirements would have been fulfilled." Oyenuga, 2023 WL 7687237, at *5. As a security guard, plaintiff may have worn a uniform or used a clipboard, flashlight, ID scanner, radio, stool, stamp, or pen that originated outside of New York State. But plaintiff's complaint made no such allegations. Without more, the Court cannot infer enterprise coverage, and thus cannot recommend that defendants should be held liable under the FLSA. Because no FLSA claims survives, no supplemental claim should be considered.[7] As such, I recommend that the Court should deny plaintiff's motion for a default judgment against defendants, but should grant plaintiff thirty days leave to amend his complaint.

---

[7] Plaintiff also brings claims under the NYLL, which does not require plaintiff to establish a nexus with interstate commerce. See N.Y. Labor Law § 651(5)-(6). However, as plaintiff has not established a claim under the FLSA, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. See Oyenuga, 2023 WL 7687237 at *5 (recommending that the Court decline to exercise supplemental jurisdiction over NYLL claims "[i]n the event that Plaintiff does not amend his complaint or asserts that he cannot meet the interstate commerce requirement" under FLSA) (citing Lin v. Quality Woods, Inc., No. 17-CV-3043, 2021 WL 4129151, at *14 (E.D.N.Y. Aug. 20, 2021)).

**III.   Damages**

Although I recommend that plaintiff's motion for a default judgment should be denied, in the interest of completeness, I consider plaintiff's claim for damages. Plaintiff seeks $48,696.60 in damages, comprised of $17,485.71 in unpaid overtime wages, $17,485.71 in liquidated damages, $10,000.00 in statutory damages, and $10,688.80 in attorney's fees and costs, as well as prejudgment interest. ECF No. 20. Even if plaintiff had sufficiently alleged defendants' liability under the FLSA, plaintiff's request for damages would be denied. The instant motion contained several significant errors that would have prevented the Court from awarding plaintiff the damages and attorney's fees sought.

   **a.  Overtime wages and liquidated damages**

First, plaintiff's counsel's damages calculation is contradicted by the allegations in the complaint.

Both the FLSA and the NYLL require an employer to pay an employee time and a half for every hour worked over 40 hours per week. See Perry v. City of New York, 8 F.4th 502 (2d Cir. 2023) (citing 29 U.S.C. § 207(a)(1)); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. To calculate unpaid overtime wages, courts (1) multiply the employee's regular hourly rate (or the minimum wage rate, if the regular rate is less than the minimum wage rate) by one and a half, and (2) multiply that rate by the number of hours worked over 40 each week. See Sarmiento v. Flagge Contracting Inc., No. 22-CV-9718, 2024 WL 806137, at *7 (S.D.N.Y. Feb. 27, 2024) (employing this method for calculating unpaid overtime wages).

Plaintiff seeks unpaid overtime wages from July 2021 through March 2022. ECF No. 1 ¶ 38. As plaintiff alleges that he worked between 50 and 60 hours per week during that period, id. ¶ 36, counsel calculates plaintiff's unpaid overtime wages using an average of 55 hours per week.

9

ECF No. 21-1 at 3. This is an acceptable method of estimating plaintiff's damages. See, e.g., Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (accepting plaintiff's estimation of his average hours of uncompensated overtime each week to be a reasonable basis for calculating damages); Aguilar v. E-Z Supply Corp., No. 06-CV-6790, 2008 WL 905224, at *4 (E.D.N.Y. Mar. 31, 2008) (same). However, counsel's math deteriorates after that point.

Plaintiff plainly alleges that he was paid a flat rate of $20.00 per hour, "for all hours worked, regardless of how many hours [] worked per week." ECF No. 22 ¶ 8. In other words, plaintiff alleges he received $20.00 per hour for each of the 55 hours worked per week. As such, plaintiff is owed the $10.00 difference between what he was actually paid ($20.00) and his overtime rate ($30.00) per hour for hours 41 through 55. This totals $150.00 per week, or $5,850.00 for the 39 weeks between July 1, 2021 and March 31, 2022. See Sarmiento, 2024 WL 806137 at * 7 (using this method to calculate unpaid overtime wages for employee who was paid flat hourly rate for all hours worked per week); Cuchimaque v. A. Ochoa Concrete Corp., No. 22-CV-6136, 2023 WL 5152336, at *4 (E.D.N.Y. July 18, 2023), report and recommendation adopted as modified, 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023) (same).

Plaintiff's counsel arrives at a figure that is triple that sum by estimating plaintiff's weekly underpayment to be $450.00.[8] See ECF No. 21-1 at 3. Counsel's method presumes that plaintiff was not paid for any hours worked above 40 each week, and thus plaintiff is owed $30.00 per hour for hours 41-55. But that is not what plaintiff alleges. Plaintiff states he was paid $20.00 per hour

---

[8] Counsel multiplies plaintiff's actual rate of pay by the number of non-overtime hours worked per week ($20.00/hour x 40 hours), arriving at an average weekly compensation of $800.00. ECF No. 21-1 at 3. Counsel then multiplies plaintiff's lawful overtime rate of pay by the average overtime hours worked per week ($30.00/hour x 15 hours), arriving at an average weekly overtime compensation of $450.00. Id. Counsel then adds these two amounts to arrive at an average lawful weekly pay of $1,250. Id. Counsel then concludes that plaintiff's weekly underpayment totals $450.00. Id. However, if counsel's damages computation reflected what plaintiff alleged in his complaint, it would follow that plaintiff was paid $1,100.00 per week ($20.00/hour x 55 hours). Thus, plaintiff received $150.00 less per week than he was entitled to in overtime compensation—not $450.00.

10

for all hours worked. As such, he is owed the unpaid $10.00 premium per hour for the 15 hours of overtime worked. Thus, if plaintiff had established defendants' liability here, he would be entitled to unpaid overtime wages totaling $5,850.00, not $17,485.71.[9]

### b. Attorney's fees

Plaintiff seeks an award of $9,886.00 in attorney's fees. ECF No. 20 at 19. This sum represents an excessive number of hours billed at an unreasonably high hourly rate.

The FLSA and the NYLL both allow for an award of "reasonable" attorney's fees, as well as costs. See 29 U.S.C. §216(b); N.Y. Lab. Law §§ 663(1), 198(4). Plaintiff bears the burden of demonstrating "the reasonableness and necessity of hours spent and rates charged." Jianmin Jin v. Shanghai Original, Inc., No. 16-CV-5633, 2020 WL 4783399, at *4 (E.D.N.Y. Aug. 18, 2020) (quoting Kindle v. Dejana, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018)). When determining reasonableness, courts consider whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Samms v. Abrams, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016). In doing so, the Court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Antolini v. McCloskey, No. 19-CV-9038, 2022 WL 2763370, at *2 (S.D.N.Y. June 22, 2022), objections overruled, 2022 WL 17070119 (S.D.N.Y. Nov. 17, 2022) (quoting DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citations and quotations omitted).

---

[9] Plaintiff would also be entitled to $5,850.00 in liquidated damages, as both the FLSA and the NYLL provide for liquidated damages equal to the amount of an employee's unpaid wages. 29 U.S.C. § 216(b), New York Lab. Law § 663(1).

11

Plaintiff's attorney's fees request represents 28 hours of work performed by attorney Jason Mizrahi at a rate of $350.00 per hour, and 1.72 hours of work performed by an individual named Alexis Abrego, whose job title and qualifications plaintiff fails to mention, but whom the Court presumes to be a paralegal given her requested rate of $50.00 per hour.[10] ECF No. 21.

Upon reviewing the time records, the Court finds certain hours to be excessive. First, the time records indicate that Mr. Mizrahi spent 2.25 hours drafting the first request for a certificate of default on November 24, 2023, ECF No. 13, which contained the wrong defendants' names in paragraph 2 of the affirmation, and another 2.25 hours drafting the second request on December 4, 2024, ECF No. 15, which corrected that error. ECF No. 21-1. It cannot take 2.25 hours to correct a single "scrivener's error." ECF No. 15-1, n. 1. Mr. Mizrahi's records also reflect that he spent two hours drafting the affidavits of service for these two requests, which the Court finds to be excessive given that the affidavits are a single paragraph of standard language. ECF No. 21-1 at 3-4. Finally, Mr. Mizrahi seeks reimbursement for 2.75 hours spent drafting a one-paragraph notice of motion for default (in addition to the 10 hours spent on the substantive components of the motion). ECF No. 21-2 at 4. This is likewise excessive given the length of the notice of motion.

Should Mr. Mizrahi submit these time records in support of a future request for attorney's fees, the Court would recommend reducing Mr. Mizrahi's time by 5.5 hours: 2 hours for the request for a certificate of default, 1 hour for the affidavit of service, and 2.5 hours for the notice of motion for default. See Kuan v. Notoriety Grp. LLC, No. 22-CV-1583, 2023 WL 3937317, at *14 (S.D.N.Y. May 22, 2023), report and recommendation adopted, 2023 WL 3936749 (S.D.N.Y. June

---

[10] Counsel recently submitted a similarly incomplete attorney's fees request to this Court. See Arguello v. Lojan, No. 22-CV-6236, 2023 WL 6594854, at *8 (E.D.N.Y. July 12, 2023), report and recommendation adopted as modified, 2023 WL 6172246 (E.D.N.Y. Sept. 22, 2023) ("Plaintiff provides no qualifications for the person identified as 'Alexis Abrego' in the submitted time records . . . . However, the court's online search revealed that Alexis Abrego has a LinkedIn profile including her experience as a paralegal at Levin-Epstein.").

9, 2023) (removing hours from Mr. Mizrahi's fee award for drafting identical requests for certificates of default and billing excessively long hours when compared to the length of the document filed).

The Court unfortunately also finds Mr. Mizrahi's requested hourly rate of $350 to be unreasonably high given the quality of work done in this particular case. This rate is "at the high end of what courts in this district generally award for work by senior associates in FLSA and NYLL cases," which typically ranges from $200 to $325 per hour. Zabrodin v. Silk 222, Inc., _ _ F. Supp. 3d _ _, No. 22-CV-7064, 2023 WL 8009319, at *14 (E.D.N.Y. Nov. 20, 2023); see also Singh v. Lintech Elec., Inc., No. 18-CV-5780, 2022 WL 1422311, at *8 (E.D.N.Y. Mar. 3, 2022), report and recommendation adopted, 2022 WL 2158748 (E.D.N.Y. June 15, 2022) (collecting cases). This Court recently declined to award Mr. Mizrahi such "above-average fees for below-average work" on a motion for a default judgment in an FLSA and NYLL action. Zabrodin, 2023 WL 8009319 at *14. The Court noted numerous mistakes, some of which Mr. Mizrahi has repeated here, such as failing to serve defendants until being reminded by the Court and attaching a damages spreadsheet that contradicted plaintiff's allegations. Id. Moreover, in this case, Mr. Mizrahi made a number of errors, including: he filed proof of untimely service on defendants without an explanation until ordered to show good cause, ECF No. 11 at 2; he submitted papers containing the names of other plaintiffs and defendants, ECF Nos. 15, 22; and he only took action to prosecute this case after being prompted twice to do so by the Court on threat of dismissal. See ECF Orders dated November 21, 2023 and February 14, 2024. "Such errors pose special problems in the default judgment context, where courts cannot rely on the adversarial process to reveal them." Zabrodin, 2023 WL 8009319 at *14. As such, if a motion for a default judgment is filed down the road in this action, the Court would recommend awarding Mr. Mizrahi a rate of $250 per hour on any

future request for attorney's fees. See Proano v. Melrose Home Improvement Corp., No. 22-CV-6050, 2023 WL 8003303, at *12 (E.D.N.Y. Nov. 17, 2023) (reducing Mr. Mizrahi's hourly rate to $250 given counsel's multiple errors "that needlessly complicated the Court's resolution of an otherwise routine default judgment motion"); see also Zabrodin, 2023 WL 8009319 at *14 (reducing Mr. Mizrahi's hourly rate to $200).

## CONCLUSION

It is respectfully recommended that plaintiff's motion for a default judgment should be denied, and plaintiff should be granted thirty days leave to amend his complaint to cure the deficiencies identified in this Report. Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                              /S/
                                     LOIS BLOOM
                                     United States Magistrate Judge

Dated: May 1, 2024
       Brooklyn, New York